Me. Justice Colcock
delivered the opinion of the court:
THIS is the first instance, within my knowledge, of an application of this legal character against the Commission - ers of the Poor. The power of this court to control all inferior jurisdictions and subordinate magistrates, and to compel them to the performance of those duties imposed on them by law, I think cannot be doubted as one mean of effecting these great objects of political economy and public justice. The writ of mandamus is used, and may Issue in all cases where there is a legal right which is withheld, and no other legal remedy for its enforcement. And even in some cases, where there is another remedy, which is not as effectual, it may he resorted to. Within the last- century, it has been liberally interposed for the benefit of the citizen, and advancement of justice. (Bacon Title Mandamus.) There is no doubt then that this court have the power to direct the Commissioners of the Poor to discharge t.he. duties which are imposed on them by the various acts of assembly, when they fail to do so. But whenever a discretion is given, the CQurt will not interfere, unless it be clearly shewn that this- discretion has been abused. There are few subjects in political economy of greater difficulty in their practical application than provisions for the poor. The ihets'stated in the suggestion of the Relator, and the answer of the Board of Commissioners, by their chairman, present two questions.
1st. Whether it was the duty of the board to discharge the demands of the Relator for the maintenance and education of the children, founded as it is alleged, on a contract with the former board : and jf so, whether this court can compel them to do up ?
*172 Secondly. Whether it was their duty to consider the children as paupers, and to make further provision for them ?
As to the first question, the court are not prepared to say, that the board' were hound to pay the demands of the Relator. If, as stated in the suggestion, there was a contract entered into between him and the Board of Commissioners, he has a vested, legal right, which he can enforce by an action at law. For admitting the great variety' of purposes, to which the writ of mandamus has been applied, I think no case can be found in which it has been used, to compel a body of men or an individual to pay a debt.
In determining the second question, it is necessary to take a view of duties imposed on the Board of Commissioners of the pool’, and the powers and authority given to them by the acts of the Legislature.
In the year 1712, while the union of state and church authority remained unbroken, the supervision of the poor was committed to the vestries of the different parishes.
By the act of 1789, the powers and 'authorities of the vestries and church wardens were transfered to the justices of the County Courts, where such were established.
And by the act of 1791, these powers were given to commissioners of the poor to be elected, according to the provisions of that act throughout the state, who are expressly arithorized to levy a tax for the purpose of raising such sum of sums as shall be necessary for the relief and education of the poor, within their respective parishes. — • Arid by fhe 29th section of the said act, (2 JSrev. 129,) it is enacted, that in ease any poor children shall be chargeable to the respective districts, it shall and may be lawful for the commissioners of such district, to hind any such child or children out to be an apprentice, until every male child shall arrive to the age of21 years, and every female, until-she shall arrive unto the age of 18 years, or be married. Adriiitting that these children were entitled to relief from the parish, (a fáct which the court; does not up *173 (ierlake to decide,) it is clear that the commissioners, in their discretion, might put them to school, or bind them out. And it appears from the Relator’s statement to the board, that they were not in the parish at the time. If then they had elected the latter mode of disposing of them, (binding out,) they could not have done so. How then can the Relator complain of a neglect to discharge a duty, the discharge of which was prevented by his own act, or even supposing it the act of the former board. When an application was mad.e to another set of officers, who might take a different view of the subject from their predecessors, it was requisite that the children should have been present, and giv.en up to the board to be dispose^ of as they might conceive most advantageous to all concerned. And I am satisfied that it is the duty of the Commisioners of the Poor, in every district, to bind out, as early as pos.sible, all poor children. It is their duty, because they should not impose the tax on their fellow-citizens when it can be avoided. It is their duty, because it is most beneficial to the children themselves. A profuse disposition of the public money, in this particular, is calculated to encourage a regular system of pauperism, an evil much to be dreaded, and onp by which the country, from which we derive our system of laws, is now most grievously oppressed, and from which the united wisdom and benevolence of the most distinguished statesmen cannot relieve her. Upon the whole, the court see no ground for their interference. The motion is dismissed.
Justices Nott, Johnson, Richardson and Gantt, concurred.